Herman K. RABB, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–90–00053–CR.

Court of Appeals of Texas, Tyler.

July 31, 1992.

---

Harry Heard, Longview, for appellant.

C. Patrice Savage, Longview, for appellee.

BILL BASS, Justice.

A jury convicted Appellant of theft over $750 but less than $20,000, enhanced by two prior felony convictions. The jury assessed punishment at life in prison. We affirm the conviction.

Appellant, in his second point of error urges that the trial court erred in not granting his motion to dismiss because the evidence was insufficient to prove that the Appellant's appropriation of the 1988 Mercury automobile was without the effective consent of the owner, Eddie Dow, the credit manager at Jack O'Diamonds Lincoln–Mercury dealership. Appellant argues that possession of the car was voluntarily given him by a salesman, and that therefore he had the effective consent of the owner. The State counters that consent was ineffective because it was induced by deception.

Viewed in the light most favorable to the prosecution, the record shows the following facts. On February 27, 1989, Appellant went to Jack O'Diamonds and entered into a retail installment contract to purchase a 1988 Mercury automobile. All credit transactions had to be approved by Dow. Appellant completed a loan application, falsifying both his residence and employment. He gave Dow $100 cash and two $400 checks for the down-payment, telling Dow that one check was good and that he would have sufficient funds in the bank to cover the other check within twenty-four hours. Dow told Appellant that he would have to show proof of insurance and income before he could be delivered the vehicle. The next day, Appellant went to an insurance agent, paid for a policy with a check drawn on insufficient funds, obtained proof of insurance and returned to the dealership. There he gave the salesman the proof of insurance, and told him that he had provided Dow with proof of income the night before. With this assurance, the salesman allowed Appellant to drive away in the car. Dow arrived back at the dealership a short time later to find that the car had been delivered to Appellant without the required proof of income. He then attempted to verify the information on the credit application and discovered it to be false in all respects bearing on Appellant's credit worthiness. The credit union refused to honor either of the $400 checks because the account was already closed because of persistent overdrafts resulting in a negative balance of several hundred dollars. The car was reported stolen and an arrest warrant issued for Appellant.

On March 3, 1989, Detective Roy Bean recognized a car matching the description of the stolen auto and followed it into a parking lot. Appellant was driving the car. When Detective Bean identified himself as a police officer and attempted to question

Appellant, Appellant suddenly left the parking lot at a high rate of speed, almost hitting a motorcycle policeman who had responded to Bean's call for assistance. A high speed chase ensued, culminating in Appellant's crashing into another car and a pickup. Appellant jumped from the car and was pursued on foot by the officers. He was apprehended after a short chase.

The evidence at trial showed that he was not employed by the U.S. Air Force as claimed on his application. He had been evicted from the address given on the application a month before after he had paid the rent with a bad check.

Dow testified that only he was authorized to deliver the car to Appellant, and that he would not have allowed Appellant to take the car if he had known that the information contained in the credit application was false, or that both of the checks given as down-payment were worthless. He also testified that he would not have given Appellant consent to take the car without proof of income.

Appellant's bank records were introduced showing that he had opened this account with an initial deposit of $50 on February 3, 1989, and made one deposit on February 13 of $135. Appellant had then proceeded to write checks and incur charges to the account in the amount of $2,571.10 before the credit union closed the account on March 1, 1989.

Appropriation of property is unlawful if it is without the owner's consent. TEX. PENAL CODE ANN. § 31.03 (Vernon 1989). Consent is not effective if it is induced by deception. TEX. PENAL CODE ANN. § 31.01. The Penal Code defines deception as follows:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and

that the actor does not now believe to be true;

(C) preventing another from acquiring information likely to affect his judgment in the transaction;

(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(2) (Vernon 1989).

■ Appellant misrepresented both his residence and employment status on the credit application. He gave two worthless checks in down-payment. He obtained proof of insurance temporarily from State Farm with another bad check. Finally, he falsely claimed that he had provided proof of income the night before. The evidence is more than sufficient to show that consent was induced by deception and therefore ineffective.

In his first point, Appellant maintains that the trial court erred in admitting evidence of "numerous" extraneous offenses.

■ In order to show that Appellant did not live at 2810 Judson Road as stated in his credit application, the State introduced a worthless check Appellant's wife gave in payment of the January 1989 rent. Appellant and his wife were evicted later in January for nonpayment of rent. The check was not given by Appellant, and moreover was relevant proof of the falsity of Appellant's claim on his credit application that he lived at 2810 Judson Road

when he had been evicted one month before. The court did not err in admitting evidence of the check.

Appellant also objected to evidence of the worthless check that he gave to obtain proof of insurance. Later in the trial, the collection manager and custodian of the records of East Texas Professional Credit Union testified from the record of Appellant's account. Appellant objected that evidence of returned checks constituted evidence of extraneous offenses. The evidence showing an unbroken sequence of bad checks was relevant to show that Appellant was not merely a bad bookkeeper, but that he acted with knowledge of the state of his account and with the intent to obtain both the proof of insurance and the car by deception.

Under the same point, Appellant complains that the trial court erred in admitting evidence of Appellant's offenses committed while pursued by the police. The evidence showed the high speed chase began with his near collision with the motorcycle officer. During its course, Appellant disregarded numerous stop signs and traffic signals. He was only stopped by a violent collision with two other vehicles. Appellant objected that testimony regarding the offenses during the pursuit constituted evidence of "extraneous offenses."

The offenses complained of are an integral part of Appellant's flight and are relevant to show his intention to escape. Flight is a circumstance from which guilt may be inferred. *Arivette v. State,* 513 S.W.2d 857, 862 (Tex.Cr.App.1974). Consequently, evidence of flight is admissible even though it may show the commission of other crimes. *Thompson v. State,* 652 S.W.2d 770, 772 (Tex.Cr.App.1981).

Each of the acts complained of has relevance beyond its tendency "to prove the character of [Appellant] to show that he acted in conformity therewith." *See* Tex. R.Crim.Evid. 404(b). They are each relevant to establish an elemental fact such as knowledge and intent, or "an evidentiary fact leading inferentially to an elemental fact." *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Cr.App.1990).

Whether objected to evidence of 'other crimes, wrongs, or acts' has relevance apart from character conformity ... [is] a question for the trial court. The trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. An appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call.

*Montgomery,* 810 S.W.2d at 391.

The trial court did not abuse its discretion in concluding the challenged proof of 'other crimes, wrongs, or acts' was relevant under Rule 404(b).

Appellant raised no separate objection based upon Rule 403 that the probative value of the evidence of other bad acts was *substantially* outweighed by its potential for unfair prejudice. In the wake of *Montgomery,* such an objection will be required. *Montgomery,* 810 S.W.2d at 388. In balancing probative worth versus prejudicial impact, *Montgomery* teaches that since the adoption of the Texas Rules of Criminal Evidence, "the presumption is now that probativeness is the weightier consideration unless in the posture of a particular case the trial court determines otherwise." *Id.* The danger of unfair prejudice must *substantially* outweigh the probative worth of the evidence of the "other crimes, wrongs, or acts." *Montgomery,* at 389. An appellate court "should reverse the judgment of the trial court 'rarely and only after a clear abuse of discretion.'" *Montgomery,* 810 S.W.2d at 392, *quoting United States v. Maggitt,* 784 F.2d 590, 597 (5th Cir.1986).

Weighing the relevant factors cited in *Montgomery,* we do not believe the trial judge abused his discretion in determining that the probative value of the evidence of other acts was not substantially out-

weighed by the danger of unfair prejudice. Appellant's first point is overruled.

The judgment is affirmed.