COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-209-CR

 

 

DERRICK PHILLIPE JACKSON                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant Derrick Phillipe
Jackson appeals from his convictions for theft and unauthorized use of a motor
vehicle.  In five points, Appellant
argues that (1) the evidence is legally and factually insufficient to prove
that Danny Leverett was the owner of the vehicle and that Appellant
appropriated and operated the vehicle without the effective consent of
Leverett, and (2) his convictions violate the Double Jeopardy Clause because
unauthorized use of a motor vehicle is a lesser-included offense of theft.  We modify in part and affirm as
modified.  

II.  Factual and Procedural Background

On October 11, 2006,
Appellant went to Neal Suzuki (Athe dealership@) and
entered into a borrowed vehicle agreement for a Ford Focus.  The following day, Appellant returned the
Focus to the dealership and stated that the Focus was not the car that he
wanted to purchase.  Appellant then
entered into a retail installment sales contract for the purchase of a Ford
Taurus.  Although Appellant signed his
legal name on the application and reference sheet, he signed Awith honor and without prejudice@ on the odometer disclosure statement, the agreement to provide
insurance, the vehicle service agreement, the contract for the purchase of a
vehicle, and the waiver form for credit life insurance.     

After Appellant left the
dealership, John Evans, a finance employee at the dealership,[1] realized that Appellant did not sign his legal name
on the documents.  Several employees then
attempted to contact Appellant on numerous occasions.  After Appellant refused to bring the Taurus
back to the dealership, the dealership had the Taurus repossessed.   








Appellant was indicted for
the offenses of theft and unauthorized use of a motor vehicle.  On May 8, 2007, a jury found Appellant guilty
of both offenses, and the following day, the trial court sentenced Appellant to
210 days in a state jail facility and a $1,000 fine for each offense, to run
concurrently. 

III.  Double Jeopardy

In his fifth point, Appellant
complains that his convictions for theft and unauthorized use of a motor
vehicle violate the Double Jeopardy Clause. Specifically, Appellant asserts
that, in his case, unauthorized use of a motor vehicle is a lesser-included
offense of theft.  The State concedes
that unauthorized use of a motor vehicle qualifies as a lesser-included offense
of theft.  As such, the proper remedy is
to reform the judgment to dismiss Appellant's conviction for the
lesser-included offense.[2]  Johnson v.
State, 903 S.W.2d 496, 499 (Tex. App.CFort Worth 1995, no pet.) (citing Hoffman v. State, 877 S.W.2d
501, 501B02 (Tex. App.CFort Worth
1994, no pet.).








We sustain Appellant=s fifth point.  Accordingly, we
will modify the trial court=s judgment to delete Appellant=s conviction for unauthorized use of a motor vehicle.  TEX. R. APP. P.
43.2(b).  

IV.  Legal & Factual Sufficiency

In his first and second
points, Appellant argues that the evidence was legally and factually
insufficient to prove that Leverett was the owner of the Taurus.  In his third and fourth points, he contends
that the evidence was legally and factually insufficient to prove that he
appropriated and operated the Taurus without the effective consent of
Leverett.  

A.  Standards of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which ground.  Goodman v.
State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d
at 7.

B.  Applicable Law

Section 31.03 of the Texas
Penal Code defines the offense of theft. 
TEX. PENAL CODE ANN. ' 31.03 (Vernon Supp. 2008). 
The statute provides that A[a] person commits an offense if he unlawfully appropriates property
with intent to deprive the owner of property.@  Id. ' 31.03(a).  Additionally,
the statute provides in relevant part that A[a]ppropriation of property is unlawful if . . . it is without the
owner=s effective consent.@  Id. ' 31.03(b)(1).  

 








C.  Applicable Facts

At trial, Pauk Kirlew, an
internet manager at the dealership, stated that on October 12, 2006, Appellant
returned to the dealership and said that he did not want to purchase the
Focus.  Kirlew then showed Appellant a
Taurus worth $15,000 and Appellant decided to purchase the Taurus.  Appellant then filled out the application
in Kirlew=s
presence.  After Appellant filled out the
paperwork, Kirlew took Appellant to Evans=s office to sign the remainder of the legal documents.  Kirlew then returned to the showroom floor. 

Immediately after Appellant
left with the Taurus, Evans called Kirlew into his office and showed him that
Appellant had signed his name Awith honor and without prejudice.@  Evans then called Appellant
several times, but Appellant did not answer the phone.   

Kirlew stated that he went to
Appellant=s house,
called Appellant=s cell
phone, work phone, and Appellant=s wife=s cell
phone, left numerous phone messages, and left messages with Appellant=s neighbors. 

He further stated that he
called Appellant with a service that showed that Appellant=s wife was calling Appellant. 
Kirlew stated that Appellant answered the phone, AHoney.@  Kirlew then identified himself and asked
Appellant to bring the Taurus back to the dealership and sign the papers
correctly.  Appellant told Kirlew that he
was harassing him and hung up the phone.   









At trial, Kirlew acknowledged
that the loan had already been approved when he walked Appellant over to Evans=s office.  However, he stated
that the bank rejected the loan because of the signature.  Kirlew stated that, although Appellant had
consent to take the Taurus, such consent was withdrawn when Appellant did not
sign his legal name.  

Leverett, the dealership=s finance director, stated that on October 12, 2006, he met Appellant
on the dealership=s showroom
floor.  He testified that three days
later, Evans brought him Appellant=s contract and said that Appellant did not sign it correctly.  Leverett told Evans to call Appellant and
tell him to come back to the dealership and sign his real name.  Leverett testified that two days later, Evans
stated that he could not get Appellant to come back to the dealership and so
Leverett began calling Appellant.  

Leverett stated that he
talked to Appellant seven or eight times. 
Leverett said that the first time that he called Appellant, Appellant
told him that Awith honor
and without prejudice@ was his
legal name.  Leverett then told Appellant
that he would have to bring the Taurus back because the bank was not going to
accept the contract with that signature. 
Leverett stated that they continued talking for a minute and then
Appellant hung up the phone.  Leverett
testified that he had several conversations with Appellant like that.   








Leverett said that after
approximately four or five days, he contacted a company to repossess the
Taurus.  Leverett stated that the Taurus
was eventually repossessed from Appellant=s house. 

Additionally, Leverett
testified that he only received a $1,000 down payment from Appellant for the
Taurus.  Leverett stated that he did not
cash the check because it was the dealership=s practice not to cash the down payment check until after a bank had
paid for the vehicle, and in this case, the bank had rejected the
contract.   

Leverett stated that although
Appellant had consent to leave the dealership with the Taurus, that consent was
withdrawn once the signature was discovered. 
Leverett testified that the contract was not binding because it was not
legally signed.   

Evans testified that he first
met Appellant when Appellant went into his office to sign the paperwork for the
Taurus.  Evans stated that he was concerned
because Appellant=s driver=s license listed a New York address and his car insurance was issued
in Florida.  After speaking with his
superiors, however, he was told that it was okay to proceed with the
transaction.  








Evans stated that Appellant
signed his name ADerrick
Phillipe Jackson@ on the
application and reference sheet. 
However, Evans said that Appellant signed his name Awith honor and without prejudice@ on the odometer disclosure statement, the agreement to provide
insurance, the vehicle service agreement, the contract for the purchase of a
vehicle, and the waiver form for credit life insurance.  Evans testified that he saw Appellant writing
on the documents and assumed that he was signing his legal name.  Evans further said that it was not a binding
contract if Appellant did not sign his legal name.  Appellant was in Evans=s office for approximately ten to twelve minutes. 

Evans testified that ten
minutes after Appellant left the dealership, he went back in his office to
review the paperwork and noticed that the documents were not signed
correctly.  Evans then went to Kirlew and
told him that he needed to contact Appellant and have him come back to the
dealership and re-sign the paperwork. 
Evans called Appellant=s cell phone later that afternoon and left a message that Appellant
needed to come back to the dealership. 
Evans did not have any contact with Appellant after he made the phone
call.   








Billy Addison Graham, a repossession
agent at North Texas Recovery, testified that he received a request to
repossess a car in Appellant=s possession.  Graham stated
that he had the paperwork approximately three to four weeks and during that time
he attempted on numerous occasions to repossess the Taurus.  He said that he knocked on Appellant=s front door at various times of the day, left notices on the door,
and waited at the house until someone returned. 
However, he stated that he never talked with anyone.  

Finally, on November 29,
2006, Graham recovered the Taurus at Appellant=s house.  Graham stated that he
talked with Frieda, Appellant=s wife, and she handed him the keys to the Taurus, which was in the
garage.  After recovering the Taurus,
Graham took it back to the dealership. 

Ingrid Retzer, a detective
with the White Settlement Police Department, testified that she spoke with
Leverett and Kirlew regarding Appellant=s theft of the Taurus.  She
further stated that she called Appellant=s cell phone and talked to him. 
She said that after she identified herself and gave Appellant some
information regarding herself, he hung up. 
Detective Retzer then called Appellant back and left a message stating
that if he had the Taurus that he should return it or else an arrest warrant
could be issued for him.   

Detective Retzer stated that
Appellant was arrested on November 20 at his job at D/FW Airport.  She testified that she never went to
Appellant=s house
because she was told that no one would answer the door.   

Mike Odle, a captain in
police operations with the White Settlement Police Department, testified that
Appellant left a message on his office phone. 
Captain Odle stated that when he returned Appellant=s phone call, he recorded the conversation.  








During the phone
conversation, Appellant told Captain Odle that Detective Retzer was threatening
him.  Captain Odle told Appellant that if
he did not have a car that belonged to the dealership then he had nothing to worry
about, but that if he did have the car, then he was going to have a warrant
issued for his arrest.  Appellant told
Captain Odle that he did not know what he was talking about. 

C.  Lack of Effective Consent

In his third and fourth
points, Appellant contends that the evidence is legally and factually
insufficient to prove that he appropriated and operated the Taurus without
Leverett=s effective consent.  

The penal code defines Aeffective consent@ as Aconsent by a
person legally authorized to act for the owner.@  TEX. PENAL CODE ANN. ' 31.01(3) (Vernon Supp. 2008). 
Consent is not effective if it is induced by deception or coercion.  Id. ' 31.01(3)(A).  The penal
code defines deception in relevant part as

(A)
creating or confirming by words or conduct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, and that
the actor does not believe to be true;

 

(B)
failing to correct a false impression of law or fact that is likely to affect
the judgment of another in the transaction, that the actor previously created
or confirmed by words or conduct, and that the actor does not now believe to be
true[.]

 








Id. ' 31.01(1)(A)-(B).[3]  

Appellant signed the initial
paperwork with his legal name.  But, on
the odometer disclosure statement, the agreement to provide insurance, the
vehicle service agreement, the contract for the purchase of a vehicle, and the
waiver form for credit life insurance, he signed Awith honor and without prejudice.@  At trial, Evans stated that he
thought that Appellant was signing his legal name on the documents.  Further, when told repeatedly by the dealership=s employees that the bank would not honor the contract with that
signature, Appellant failed to return to the dealership to correct the
paperwork. 








Additionally, Appellant was
aware on October 12, shortly after he left the dealership, that he no longer
had the dealership=s consent to
drive the Taurus when Evans left Appellant a message on his cell phone that he
needed to come back to the dealership and re-sign the paperwork.  Both Kirlew and Leverett testified that they
had phone conversations with Appellant telling him that he needed to bring the
Taurus back and sign the paperwork correctly. 
Further, Detective Retzer stated that she spoke with Appellant and told him
that he needed to return the Taurus to the dealership.  Captain Odle also testified that he had a
phone conversation with Appellant regarding the Taurus and that he told
Appellant that he needed to return the Taurus or an arrest warrant was going to
be issued.  During this conversation,
Appellant told Captain Odle that he did not know what he was talking
about.  

The evidence is more than
sufficient to prove that Leverett=s consent was induced by deception. 
See Rabb v. State, 835 S.W.2d 270, 272 (Tex. App.CTyler 1992, no pet.) (holding consent was induced by deception when
the defendant misrepresented his address and employment on application, gave
worthless checks for down-payment, and obtained proof of insurance with bad
check). 

After reviewing the evidence
in the light most favorable to the verdict, we conclude that any rational juror
could have found that Appellant did not have Leverett=s effective consent to take the Taurus.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton, 165 S.W.3d at 693. 
Additionally, the evidence supporting the conviction is not so weak, nor
the contrary evidence so overwhelming, that the jury=s verdict is clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414B15, 417.  Thus, we overrule
Appellant=s third and
fourth points.  

 

 

 








D.  Owner of the
Taurus

In Appellant=s first and second points, he argues that the evidence is legally and
factually insufficient to prove that Leverett was the owner of the Taurus.  We disagree.

The penal code defines Aowner@ as a person
who Ahas title to the property, possession of the property, whether lawful
or not, or a greater right to possession of the property than the actor.@  TEX. PENAL CODE ANN. ' 1.07(a)(35)(A) (Vernon Supp. 2008).  APossession@ is defined
as Aactual care, custody, control, or management.@  Tex. Penal Code Ann. ' 1.07(a)(39).

An allegation of ownership
may be alleged in either the actual owner or a special owner.  Lewis v. State, 193 S.W.3d 137, 140
(Tex. App.CHouston [1st
Dist.] 2006, no pet.); see also Freeman v. State, 707 S.W.2d 597, 603
(Tex. Crim. App. 1986).  A Aspecial owner@ is an
individual, such as an employee, who is in care, custody, or control of the
property belonging to another person or a corporation.  Liggens v. State, 50 S.W.3d 657, 660
(Tex. App.CFort Worth
2001, no pet.); see also Harrell v. State, 852 S.W.2d 521, 523 (Tex.
Crim. App. 1993); Roberts v. State, 513 S.W.2d 870, 871‑72 (Tex.
Crim. App. 1974).  








Proof of ownership can be
shown by an automobile salesperson who has care, custody, and control of a new
car.  Joshlin v. State, 468 S.W.2d
826, 827 (Tex. Crim. App. 1971); see also TEX. CODE CRIM. PROC. ANN. art. 21.08 (Vernon 2007) (stating that A[w]here one person owns the property, and another person has the
possession of the same, the ownership thereof may be alleged to be in either.@).  Accordingly, Leverett, as
the dealership=s finance
director, was the proper owner of the Taurus. 


Appellant contends that he
had a greater right of possession to the Taurus because, although he signed the
contract Awith honor
and without prejudice,@ the
dealership could still enforce the contract. 
However, because Appellant did not have Leverett=s effective consent to take the Taurus, he did not have a greater
right of possession to the Taurus.  

After reviewing the evidence
in the light most favorable to the verdict, we conclude that any rational juror
could have found Leverett was the owner of the Taurus.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton, 165 S.W.3d at 693. 
Additionally, the evidence supporting the conviction is not so weak, nor
the contrary evidence so overwhelming, that the jury=s verdict is clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414B15, 417.  Thus, we overrule
Appellant=s first and
second points.  

V.  Conclusion








Having sustained Appellant=s fifth point, we modify the trial court=s judgment to delete Appellant=s conviction for unauthorized use of a motor vehicle.  Having overruled Appellant=s remaining points, we affirm the trial court=s judgment as modified.  

 

ANNE GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

 

PUBLISH

 

DELIVERED:  August 29, 2008











[1]… At the time of trial, Evans was no longer
working at the dealership.





[2]… Although not addressed by Appellant, we further
observe that the trial court did not orally pronounce the sentence for the
offense of unauthorized use of a motor vehicle. 
See McClinton v. State, 121 S.W.3d 768, 770 (Tex. Crim. App.
2003) (noting that the oral sentence announced in open court is the sentence
imposed).  





[3]… The jury charge did not contain the definition
of deception.